# JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 21-1190 JGB (SPx)** | Date | March 3, 2022 |
|---|---|---|---|
| Title | ***Sheila Brass et al v. FCA US LLC et al.*** | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Plaintiff(s):    Attorney(s) Present for Defendant(s):

None Present                     None Present

Proceedings:    **Order (1) GRANTING Plaintiffs' Motion for Remand (Dkt. No. 19); and (2) VACATING the March 7, 2022 Hearing (IN CHAMBERS)**

　　Before the Court is Motion for Remand filed by Plaintiffs Sheila Brass and Gerald Johnson ("Plaintiffs"). ("Motion," Dkt. No. 19.) The Court finds the Motion appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion and **VACATES** the March 7, 2022 hearing.

## I.    BACKGROUND

　　On February 18, 2021, Plaintiffs filed their Complaint in the Superior Court of the State of California for the County of San Bernardino against Defendants FCA US, LLC ("FCA"); and Jeep Chrysler Dodge Ram Fiat of Ontario. ("Complaint," Dkt. No. 1-3.) The Complaint alleges six causes of action, consisting of violations of the Song-Beverley Consumer Warranty Act (the "Song-Beverley Act"), Cal. Civ. Code § 1790 et seq., and fraudulent inducement. (Id.)

　　On July 16, 2021, Plaintiffs dismissed Jeep Chrysler Dodge Ram Fiat of Ontario from the action. (Dkt. No. 1-10.) That same day, FCA removed the action to federal court. ("Removal," Dkt. No. 1.) Plaintiffs filed the instant Motion on February 3, 2022. Plaintiffs also filed a request for judicial notice. ("RJN," Dkt. No. 20.) FCA opposed on February 14, 2022. ("Opposition," Dkt. No. 21.) Plaintiffs replied on February 18, 2022. ("Reply," Dkt. No. 22.)

//
//

## II.    LEGAL STANDARD

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove a matter to federal court where the district court would have original jurisdiction.  Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).  Federal courts have limited jurisdiction, "possessing only that power authorized by Constitution and statute."  Gunn v. Minton, 568 U.S. 251, 256 (2013).  As such, a defendant may remove civil actions in which (1) a federal question exists or (2) in which complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000.  See 28 U.S.C. §§ 1331, 1332.  "Complete diversity" means that "each defendant must be a citizen of a different state from each plaintiff."  In re Digimarc Corp. Derivative Litigation, 549 F.3d 1223, 1234 (9th Cir. 2008).

When a state-court complaint alleges on its face "damages in excess of the required jurisdictional minimum," the amount pled controls, unless it appears "to a legal certainty" that the claim is for less than the jurisdictional amount.  Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 402-404 (9th Cir. 1996).  Conversely, "[w]here it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold."  Fritsch v. Swift Transportation Co. of Arizona, LLC, 899 F.3d 785, 793 (9th Cir. 2018).  This sum is determined as of the date of removal.  Id. at 790.  "[T]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [the] defendant's liability."  Lewis v. Verizon Comm'ns. Inc., 627 F.3d 395, 400 (9th Cir. 2010).  Accordingly, "in assessing the amount in controversy, a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'"  Campbell v. Vitran Express, Inc., 471 F. App'x. 646, 648 (9th Cir. 2012) (quoting Kenneth Rothschild Trust v. Morgan Stanley, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).

The removing party need only include a "short and plain statement" setting forth "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 88 (2014).  However, where the plaintiff contests the removing defendant's allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in controversy requirement has been satisfied."  Id. at 82.

## III.    REQUEST FOR JUDICIAL NOTICE

Plaintiffs request judicial notice of remand orders by various California district courts in lemon law cases.  (See RJN.)  The Court "may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  The Court, for example, "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."  United States ex rel.

Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992). Accordingly, the Court GRANTS the RJN.

## IV.   DISCUSSION

Plaintiffs move to remand on the basis that FCA has failed to meet its burden to prove, by a preponderance of the evidence, that the amount-in-controversy requirement is satisfied.  FCA argues that the Court has diversity jurisdiction of this action because (1) the amount in controversy exceeds $75,000; and (2) there is complete diversity since Plaintiffs are citizens of California, and FCA is not a citizen of California.  (See Removal.)  Diversity of citizenship is uncontested.

### A.  Legal Certainty Test

The Court finds that the amount in controversy is not facially evident.  The only monetary value pled in the body of the Complaint is "damages in a sum to be to be proven at trial in an amount that is not less than $25,001.00."  (Complaint ¶ 21.)  Because the $25,001 amount "is not repeated in the Prayer for Relief," the Complaint "fails to allege a sufficiently specific total amount in controversy."  See Guglielmino v. McKee Foods Corp., 506 F.3d 696, 701 (9th Cir. 2007).  So although various items are listed in the prayer for relief, "it is unclear whether **all** [of the] damages are subsumed within the request for $25,001."  Schneider v. Ford Motor Co., 441 F. Supp. 3d 909, 913 (N.D. Cal. 2020) (emphasis in original).  In the Motion, Plaintiffs clarify that the "damages" allegation in the Complaint refers collectively to total damages (Motion at 7); thus, "[i]n the absence of any contradictory allegations in the Complaint, the Court accepts Plaintiffs' explanation that the $25,001.00 figure represents the combined total" damages. Feichtmann v. FCA US LLC, 2020 WL 3277479, at *3 (N.D. Cal. June 18, 2020).  As such, because the amount in controversy is unclear from the face of the Complaint, the Court "must determine" if the Complaint has "shown by a preponderance of the evidence that the amount in controversy exceeds $75,000."  Schneider, 441 F. Supp. 3d at 913.

### B.  Preponderance of the Evidence Test

Because FCA has established only that the Complaint alleges $25,001 in controversy, "FCA must establish by a preponderance of evidence that at least an additional" $49,999.01 is in controversy."  See Feichtmann, 2020 WL 3277479, at *3.

#### 1.  Actual Damages

Actual damages pursuant to the Song-Beverly Act are the "amount equal to the actual price paid or payable by the buyer," less the reduction in value "directly attributable to use by the buyer."  Cal. Civ. Code § 1793.2(d)(2)(B)-(C).

To establish the actual price paid or payable pursuant to the statute, FCA relies on an undisputed Retail Installment Sales Contract ("RISC").  (See Opposition at 4.)  The vehicle

purchase price can demonstrate actual damages under the Song-Beverly Act, particularly when a plaintiff seeks recovery of "the entire contract price." Schneider, 441 F. Supp. 3d at 914–15; see also Luna v. FCA US LLC, 2021 WL 4893567, at *7 (N.D. Cal. Oct. 20, 2021) ("Courts routinely find that an undisputed Retail Installment Sales Contract can establish actual damages."). However, the Song-Beverly Act provides that "the actual price paid or payable by the buyer includes any **paid** finance charges." Alvarado v. FCA US, LLC, 2017 WL 2495495, at *4 (C.D. Cal. June 8, 2017) (emphasis added).

Here, "[b]ecause the record does not show" whether Plaintiffs have "made all the installment payments," the Court cannot determine whether Plaintiffs have "paid all the finance charges that are included in the total sale price of the Vehicle." Luna, 2021 WL 4893567, at *7. The Court, therefore, "follows other district courts in concluding that it is more appropriate to use the total cash price listed in the [RISC]"—here, $27,465.40[1]—as the initial amount for the calculation of actual damages. See Luna, 2021 WL 4893567, at *7; ("RISC," Dkt. No. 21-1, Ex. A).

The Court agrees with Plaintiffs that the total cash price must be reduced by a statutory mileage offset. (See Motion at 8, 9.) Under the Song-Beverly Act, any restitution "must be reduced by the amount directly attributable to use (as measured by miles driven) by the consumer prior to the first repair (or attempted repair) of the problem as pro-rated against a base of 120,000 miles." Alvarado, 2017 WL 2495495, at *4; Cal. Civ. Code § 1793.2(d)(2)(C). Pursuant to Cal. Civ. Code section 1793.2(d)(2)(C), FCA must identify the first repair **attempt** "for correction of the **problem that gave rise to the nonconformity**." Cal. Civ. Code § 1793.2(d)(2)(C) (emphasis added).

The Court, however, finds that FCA fails to meet its burden to show that its calculations of actual damages are appropriate. Firstly, FCA incorrectly calculates the mileage offset amount because (1) FCA wrongly uses the sales price instead of the total cash price; and (2) FCA wrongly asserts that the Vehicle's odometer had "approximately 11 miles at the time of purchase" (Opposition at 6 n.1) whereas, in reality, the odometer read as having 56,769 miles at the time of purchase on July 12, 2016 (see RISC).

Secondly, FCA has failed to meet its burden of identifying the first repair **attempt** "for correction of the problem that gave rise to the nonconformity." See Cal. Civ. Code § 1793.2(d)(2)(C). Although FCA does not include a repair order history in the Removal, the Complaint alleges a history of Plaintiffs' presentation of the Vehicle to an authorized repair facility. (Complaint at 2, 3.) Plaintiffs allege that the Vehicle developed various defects, such as "defects related to the powertrain system, including the engine, and/or transmission; defects related to the electrical system, and other defects." (Id. ¶ 11.) On August 8, 2016, Plaintiffs presented the Vehicle—with 57,633 miles on the odometer—to an authorized repair facility with

---

[1] Plaintiffs assert that the "total cash price" listed in the RISC for the subject vehicle is $22,000 (Reply at 7 n.2); but that amount is the "cash price of motor vehicle and accessories," not the "**total** cash price"—which is listed in the RISC as $27,465.40 (see RISC).

various concerns, including the transmission's "jumping from drive to sport mode and jerking." (<u>Id.</u> ¶ 12.)  Plaintiffs assert that FCA's technicians concluded the Vehicle "was not in need of repairs." (<u>Id.</u> ¶ 12.)  Indeed, the service order confirms Plaintiffs' assertion: the technicians test-drove the vehicle, determined that it was "operating as intended," and did not charge Plaintiffs for the service.  ("Service Order 1," Exhibit B, Dkt. No. 21-1.)  The Court, therefore, concludes that no repair attempt was made on the August 8, 2016 service visit.  Accordingly, the Court finds that FCA "fails to show by a preponderance of the evidence that no mileage offset, or a mileage offset based on the first" service visit "provides the proper measure of actual damages"; "[a]t best," FCA's "calculations of actual damages are speculative and self-serving." <u>See</u> <u>Gutierrez v. Ford Motor Co.</u>, 2021 WL 4399517, at *2 (C.D. Cal. Sept. 27, 2021).

### 2. Civil Penalties

Plaintiffs may be entitled to a civil penalty no greater than twice the amount of actual damages, but only if FCA's violations were willful.  <u>See id.</u> (citing Cal Civ. Code § 1794 (c)).  However, in the jurisdictional analysis, the civil penalty  "cannot simply be assumed"; instead, "the defendant must make some effort to justify the assumption."  <u>Id.</u> (quoting <u>D'Amico v. Ford Motor Co.</u>, 2020 WL 2614610, at *3 (C.D. Cal. May 21, 2020).  Many courts, including this one, do not include civil penalties in the jurisdictional analysis "unless the removing defendant makes some showing regarding the possibility of civil damages."  <u>See</u> <u>Savall v. FCA US LLC</u>, 2021 WL 1661051, at *3 (S.D. Cal. Apr. 28, 2021) (collecting cases).

Here, FCA argues that the Court should include the full civil penalty in the amount in controversy because "FCA US is not required to put forth evidence in support of an award for civil penalties—it is sufficient that Plaintiffs alleged an intentional failure to comply and seeks the civil penalty."  (Opposition at 7.)  However, aside from referring to Plaintiffs' "allegation that FCA acted willfully . . . FCA provides no support for the likelihood that a civil penalty based on its willfulness would actually be awarded in this case, or that the full civil penalty would be awarded."  <u>See</u> <u>Savall</u>, 2021 WL 1661051, at *3; <u>see also</u> <u>D'Amico</u>, 2020 WL 2614610, at *3 (declining to include civil penalties in the amount in controversy because "Defendant points only to Plaintiff's allegation that she should recover a civil penalty, and four jury verdicts awarding civil penalties[]").  The Court, therefore, will "not simply assume that a civil penalty will be awarded," especially considering that "the removal statute is strictly construed against removal jurisdiction."  <u>See</u> <u>D'Amico</u>, 2020 WL 2614610, at *3.

### 3. Attorney's Fees

Finally, FCA argues that Plaintiffs' request for attorney's fees should be included in the amount-in-controversy calculation, but that FCA does "not even need to rely on estimated attorney's fees to reach the $75,000 threshold."  (Opposition at 8.)  "FCA's assumption," however, "is fatal to its Opposition."  <u>See</u> <u>Elizabeth Cabrera, et al. v. FCA US LLC</u>, 2022 WL 310133, at *5 (C.D. Cal. Feb. 1, 2022).

"Attorney fees that accrue after the filing of a notice of removal may be included in an estimate of the amount in controversy." D'Amico, 2020 WL 2614610, at *4 (citing Fritsch, 899 F.3d at 795). Nevertheless, a removing defendant must "prove that the amount in controversy (including attorneys' fees) exceeds the jurisdictional threshold by a preponderance of the evidence," and must "make this showing with summary-judgment-type evidence." Fritsch, 899 F.3d at 795.

Here, FCA fails to meet that burden. As Plaintiffs correctly identify, FCA merely "seems to imply that attorney's fees should be considered based on the sole fact that Plaintiff's Counsel's firm requests certain fees [in] **other** lemon law cases, but [FCA] fails to analogize the facts or circumstances of **this** case to any other **potentially** relevant cases." (Reply at 11 (citing Schneider , 441 F. Supp. 3d at 915 ("All that Defendants claim is that the same counsel appears in each case and that the subject-matter of the cases are the same. They do not, however, compare or contrast the litigation strategies or the litigation timelines of the two cases.")).) Therefore, because "FCA provides no specific evidence of the attorneys' fees in this case," see Elizabeth Cabrera, 2022 WL 310133, at *5, the Court concludes that attorneys' fees cannot be used to satisfy the amount-in-controversy requirement.

In sum, FCA fails to establish, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. This Court, therefore, lacks subject matter jurisdiction over the Complaint. The Court GRANTS the Motion.

## V.     CONCLUSION

For the reasons above, the Court **GRANTS** the Motion and **REMANDS** to the Superior Court of the State of California for the County of San Bernardino. The March 7, 2022 hearing is **VACATED.** The request for remote appearance (Dkt. No. 25) is DENIED as MOOT.

The Clerk is directed to close the case.

**IT IS SO ORDERED.**